IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BOARD OF EDUCATION OF THE          )
CITY OF CHICAGO,                   )
                                   )
                    Plaintiff,     )
                                   )
      v.                           )      No.  06 C 3078
                                   )
ILLINOIS STATE BOARD OF EDUCATION, )
et al., etc.,                      )
                                   )
                    Defendants.    )

<u>MEMORANDUM OPINION AND ORDER</u>

City of Chicago's Board of Education, operator of Chicago
Public Schools District Number 299 ("District"), bas brought this
action against the Illinois State Board of Education ("State
Board") and Joanne and Mitchell S. ("Parents"), the parents and
next friends of Maximus S. ("Max"), pursuant to the Individuals
with Disabilities Education Act ("IDEA," 20 U.S.C. §§1400-1419).[1]
District's Complaint challenges a decision by an administrative
hearing officer ("Hearing Officer") that granted Parents
reimbursement for the cost of Max's private schooling.

District and Parents have filed cross motions for summary
judgment under Fed. R. Civ. P. ("Rule") 56, respectively seeking
reversal and affirmance of certain of the Hearing Officer's
decisions and orders.  For the reasons stated in this memorandum
opinion and order, District's motion is denied and Parents' is

_____

[1] All citations to IDEA provisions will simply take the
form "Section --," referring to the most current numbering in
Title 20 rather than to IDEA's internal numbering.

granted in its entirety.

<u>Summary Judgment Standards</u>[2]

Generally motions for summary judgment are decided following the familiar Rule 56 standard as explained in a host of cases exemplified by <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Actions for judicial review of an administrative hearing under IDEA are, however, a somewhat different breed (see <u>Heather S. v. Wis.</u>, 125 F.3d 1045, 1052 (7th Cir. 1997)). Section 1415(i)(2)(C) prescribes the scope of and procedure for judicial review of such administrative agency decisions under IDEA:

> In any action brought under this paragraph, the court –
> (i) shall receive the records of the administrative
> proceedings; (ii) shall hear additional evidence at the
> request of a party; and (iii) basing its decision on
> the preponderance of the evidence, shall grant such
> relief as the court determines is appropriate.

Under that standard, when a district court does not hear additional evidence a summary judgment motion calls for a

---

[2] This District Court's LR 56.1 implements Rule 56 by requiring the submission of evidentiary statements and responses to such statements to highlight which facts are in dispute and which are not. Despite the fact that the use of such initials might seem to reverse the roles of plaintiff and defendant, this opinion will cite District's LR 56.1 statement as "D. St. ¶-," its LR 56.1 responsive statement as "D. Opp. St. ¶--" and its memoranda of law in support of its motion and in opposition to Parents' motion as "D. Mem." and "D. Opp. Mem." Parents' filings will be cited in the same fashion, prefaced by "P." rather than "D." Citations to the administrative record before the Hearing Officer will take the form "AR," while the Hearing Officer's decision and order found at AR 14-30 will be cited "Dec.," using the internal page numbering of that decision rather than the corresponding AR page numbers.

decision based on the administrative record alone (<u>Heather S.</u>, 125 F.3d at 1052). Hence "[d]espite being termed summary judgment, the district court's decision is based on the preponderance of the evidence," with the party challenging the outcome of the administrative hearing--in this case District-- bearing the burden of proof (<u>id.</u>).

Notwithstanding those principles, District Invokes Section 1415(i)(2)(C)(ii) to ask this Court to hear--and to take judicial notice of--evidence that was not part of the record before the Hearing Officer (D. Mem. 5-6; D. St. ¶¶15, 16, 23). While the consideration of additional evidence under that Section is within judicial discretion, a court must keep in mind that its role in the IDEA framework is one of review and not trial de novo (see <u>Monticello Sch. Dist. No. 25 v. George L.</u>, 102 F.3d 895, 901 (7th Cir. 1996)).

In this instance District points only to cases stating general principles of judicial notice under the Federal Rules of Evidence, without advancing any reason for this Court to allow the introduction of evidence now that was readily available before the administrative hearing. This Court declines that invitation. Instead it will consider only the additional evidence provided in D. St. ¶15, because District's argument based on that new evidence could be viewed as a challenge to the power of the Hearing Officer and thus to the administrative

procedure itself under IDEA (D. Mem. 12-13; see also <u>Monticello</u>, 102 F.3d at 902).  Because P. Opp. St. ¶15 admits the fact offered in D. St. ¶15 and because District's argument based on that fact is a non-starter, this is "essentially a no-new-evidence case" that simply reviews the administrative record with the appropriate deference (see <u>Sch. Dist. of Wis. Dells v. Z.S.</u>, 295 F.3d 671, 675 (7th Cir. 2002)).

In all events, <u>Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley</u>, 458 U.S. 176, 206 (1982)("<u>Rowley</u>") cautions that Section 1415(i)(2)(C) should not be read as "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Instead courts must accord "due weight" to the results of state administrative proceedings (<u>id.</u>).  Further emphasizing a reviewing court's limited role, <u>Heather S.</u>, 125 F.3d at 1053 teaches:

> that the "due weight" which the court must give to the hearings below is not to the testimony of witnesses or to the evidence--both of which the court must independently evaluate--but to the decisions of the hearing officers.

Mindful of that task, this opinion evaluates the evidence in the record independently, while at the same time viewing the Hearing Officers' decisions through a deferential lens.

## Background

When only a year old, Max lost his hearing--a "disability"

as defined by IDEA--because of a bout with bacterial meningitis (D. St. ¶6; P. St. ¶¶5,8). At 18 months Max received a cochlear implant[3] in his right ear that allowed him to interpret sound sufficiently to gain an ability to listen, comprehend and use language with the aid of special education and other accommodations (see P. St. ¶¶9, 11; D. St. ¶7; P. Opp. St. ¶7). Parents wanted Max, with the assistance of the cochlear implant, to learn to communicate through spoken language (i.e., orally and aurally) rather than through sign language. Accordingly they wished his education to be tailored to that goal (P. St. ¶¶13, 14).

As Chicago residents, Parents first enrolled Max in preschool at a District school program for the hearing impaired, beginning in the spring of 2001 (when he was 3 years old) and continuing until December 2002 (P. St. ¶¶5, 16; D. St. ¶¶9-10). Unsatisfied with the services and education provided to Max at the District school, and unable to find a local school that met his needs, Parents removed Max from the District school and enrolled him in a residential program at the Central Institute for the Deaf in St. Louis, Missouri ("St. Louis Institute")(D. St. ¶11, P. St. ¶¶22-29). Within the first two months at that new school, its staff identified residual hearing in Max's left

---

[3] "A cochlear implant is [an] electronic device that provides sound by directly stimulating the surviving auditory nerve fibers in the inner ear" (P. St. ¶10).

ear that could be enhanced through the use of a hearing aid (P. St. ¶30).

After discovering that the St. Louis Institute's residential program was closing, in early 2004 Parents asked District to evaluate Max for a possible return to its schools (D. St. ¶31). In an effort to comply with the IDEA individualized education program requirements for children with disabilities, District scheduled and conducted an evaluation and conference with school officials and Parents in March 2004, at the conclusion of which District offered Max an individualized education program that involved enrollment in the District with special education and services (P. St. ¶¶32, 35, 38; D. St. ¶¶18, 20, 21). Unsatisfied with the outcome of that process, Parents objected to the plan and enrolled Max for the 2004-05 school year at another out-of-state residential program, St. Joseph Institute for the Deaf ("St. Joseph Institute") in Chesterfield, Missouri (P. St. ¶14; D. St. ¶¶33-40).

In an effort to obtain reimbursement for the cost of their unilateral placement of Max at St. Joseph Institute, Parents initiated a due process hearing under IDEA in January 2005 (P. St. ¶45). After the parties engaged in a mediation process through State Board, a new individualized education program conference was held among District staff, Parents and the staff from St. Joseph Institute to consider Max's needs and his

appropriate educational placement (P. St. ¶¶46-47; D. St. ¶¶26-27). At the conclusion of that conference District offered an individualized education program, consisting as before of Max's placement at a District school with special education services, but also allowing Max to take part in certain classes such as gym, art and music with non-disabled peers (P. St. ¶48, 50; D. St. ¶¶29-30). Again unsatisfied with that result, Parents kept him enrolled at St. Joseph Institute for the 2005-06 school year.

With no agreement on Max's education having been reached through the mediation process, an administrative hearing was held over eight days in October and November 2005 before the State Board Hearing Officer (Admin. Dec. 1). As to the issues relevant to this action, the Hearing Officer concluded (1) that District had failed to provide Max with a free appropriate public education as required by IDEA for the 2004-05 and 2005-06 school years, because the offered individualized education programs did not provide Max with enough audiological services and other accommodations to obtain sufficient educational benefit, (2) that St. Joseph Institute was an appropriate alternative private placement for Max for those school years and (3) that Parents were entitled to reimbursement from District for costs incurred in sending Max to St. Joseph Institute (Dec. 15-16).

## District's Program Proposals

IDEA provides federal grants to States, which in turn

provide funds to local school districts for assistance in educating disabled students. Participating States such as Illinois must have policies insuring that a "free appropriate public education is available to all children with disabilities" (Section 1412(a)(1)(A)). Section 1401(9) defines "free appropriate public education" as comprising:

special education and related services that --

(A) have been provided at public expense, under public supervision and direction, and without charge;
(B) meet the standards of the State educational agency;
(C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M., 356 F.3d 798, 802 (7th Cir. 2004)(per curiam)("Evanston Dist.") reemphasizes that in guaranteeing such an appropriate education "[s]chool districts are not required to do more than to provide a program reasonably calculated to be of educational benefit to the child; they are not required to educate the child to his or her highest potential." But to meet that mandate, school districts must tailor the free appropriate education to meet the unique needs of each child by means of an "individualized educational program" arrived at through an interactive process among teachers, parents, local educational officials and, in

appropriate circumstances, the child himself or herself (<u>Rowley</u>, 458 U.S. at 181-82).

District argues that the Hearing Officer's determination that District's individualized education programs failed to provide Max with a free appropriate public education for the 2004-05 and 2005-06 school years was incorrect as a matter of law and was unsupported by a preponderance of the evidence (D. Mem. 6). In those respects <u>Rowley</u>, 458 U.S. at 206-07 has set out the two-stage judicial inquiry in reviewing an administrative decision as to a school district's plan for a free appropriate public education:

> First, has the State complied with the procedures set forth in [IDEA]? And second, is the individualized educational program developed through [IDEA's] procedures reasonably calculated to enable the child to receive educational benefits? If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more.

In those terms this Court holds that the Hearing Officer's conclusions conform to IDEA and are well supported by sufficient evidence in the record.

As to any asserted procedural shortcomings, <u>Heather S.</u>, 125 F.3d at 1059 (the following brackets and ellipsis are present in that opinion) adopted this standard prescribed by <u>W.G. v. Bd. of Trs.</u>, 960 F.2d 1479, 1484 (9th Cir. 1992):

> Procedural flaws do not automatically require a finding of a denial of a [free appropriate public education]. However procedural inadequacies that result in the loss of educational opportunity...clearly result in the

denial of a [free appropriate public education].
While finding no procedural faults in the individualized
education program formulation process for the 2005-06 school year
(Dec. 14), the Hearing Officer found several fatal procedural
violations as to the 2004-05 school year.  Those included the
failure to provide sufficient notice to Parents for the March 25,
2004 meeting to draw up his individualized education program; the
failure to reschedule that meeting when it became clear that
Parents had not received copies of the evaluations of and reports
on Max before the meeting; the use of a small cold projection
room above an auditorium for Max's evaluation at the meeting; and
the failure to reconvene that meeting at the request of Max's
mother after Parents had been presented with a completed
individualized education program at the conclusion of the meeting
(P. St. ¶62; Dec. 11-12).  Whether the record is evaluated by the
"substantial evidence" or the "clear error" standard, there is
unquestionably ample evidence to support those factual
conclusions (P. St. ¶¶32, 33, 34, 37; D. Opp. St.  ¶¶32, 33, 34,
37; Dec. 6; see also <u>Sch. Dist. of Wis. Dells</u>, 295 F.3d at 675).

Instead of attempting to challenge those findings as it
should have, District chooses to argue that those shortcomings
did not rise--or more accurately fall--to the level of procedural
flaws that deny a child a free appropriate public education (D.
Opp. Mem. 3).  That contention is wholly unpersuasive.

Procedural flaws that "seriously infringe the parents'
opportunity to participate in the [individualized education
program] formulation process" are the very kind of serious
deficiencies that "clearly result in the denial of a [free
appropriate public education]" (W.G., 960 F.2d at 1484).  Failure
to provide Parents with sufficiently timely notice of the purpose
of the individualized education program meeting--as required by
34 C.F.R. §300.345[4]--certainly impeded Parents' ability to
participate in the process, for it led directly to their not
inviting their own consultants to the meeting (Dec. 6).

    Such failures (1) to provide Parents with the evaluation
reports of their son in time to review them prior to the meeting
and (2) to reconvene the meeting at a time after they had an
opportunity to review the reports with their own consultants are
procedural shortcomings of the very same kind (see Amanda J. v.
Clark County Sch. Dist., 267 F.3d 877, 893-94 (9th Cir. 2001)).
Indeed, Section 1415(b)(1) requires that parents have "[a]n
opportunity...to examine all records relating to [the] child" in
the individualized education program process.   Not providing
that opportunity is the very type of error that blocks a parent's
ability to participate fully in the process, with the unfortunate
consequence of a loss of educational opportunity for a child with

---

[4]  Further citations to the C.F.R. will take the form "Reg.
§--," omitting repeated references to "34 C.F.R."

disabilities.  This Court therefore upholds the Hearing Officer's conclusion that those procedural shortcomings led to a denial of a free appropriate public education for Max by the District for the 2004-05 school year.

Rowley's two-factor judicial inquiry also requires an appropriately deferential, but still independent, review of whether the individualized education program offered by District was reasonably calculated to be of educational benefit to Max (Evanston Dist., 356 F.3d at 802).  Substantively the individualized education programs drawn up by District for the 2004-05 and 2005-06 school years were very similar in terms of the crucial aspects dealt with by the Hearing Officer (P. St. ¶¶50, 64).  This opinion will address the two plans in tandem, just as the Hearing Officer's opinion appears to have done.

Applying the correct legal standard, the Hearing Officer concluded that because District's proposed programs for Max did not include daily one-to-one speech/language pathologist services, direct (rather than consultative) audiological services, adequate acoustical modifications to classrooms and any plan for an increasing number of students with cochlear implants, those programs could, rather than providing educational benefit to Max, cause him to regress in his newly-developing fundamental speech and language skills that are necessary for successful advancement in all of his subjects (P. St. ¶¶64-65, 66; Dec. 14-

16).

In part the extensive evidence supporting the Hearing Officer's conclusions included testimony from St. Joseph Institute staff that its enumerated services and other accommodations were necessary to enable Max to continue to progress in his speech and language skills (see, e.g., P. St. ¶47). District counters (1) that multiple witnesses testified that Max did make progress earlier when he was in a District school and was receiving services similar to those outlined in the individualized education programs and (2) that those programs as written would also provide Max with educational benefit (see, e.g., D. Opp. St. ¶¶25, 65; D. Opp. Mem. 2). But it is at this point that the deference this Court owes to the Hearing Officer's conclusions comes into play. It is not for this reviewing court to decide which of the witnesses it believes to be correct. It is rather for the Hearing Officer, certainly more qualified than this Court to evaluate such opinions, to regard the extensive experience and training of the St. Joseph Institute staff as rendering its testimony more credible (see AR 1007-10 (testimony of Sister Roseanne Siebert)).[5]

---

[5] Just as courts routinely instruct juries, a factfinder is free to find the testimony of fewer witnesses (or even of a single witness) more persuasive than the testimony of a greater number (see, e.g., Federal Civil Jury Instructions of the Seventh Circuit 1.17 (2005); New Burnham Prairie Homes, Inc., v. Vill. of Burnham, 910 F.2d 1474, 1483 n.6 (7th Cir. 1990)).

Also significant to the Hearing Officer's conclusion that
the individualized education programs were "mostly
unimplementable" (Dec. 15), testimony from Max's mother about his
previous experience with one of District's schools certainly goes
to the quality of the services that would actually be provided in
District's schools, in contrast to what they might appear to be
on the face of the programs as written (P. St. ¶¶17, 25, 26; Dec.
13).  As an example of just one of those issues, the failure of
the District staff to detect the residual hearing in Max's left
ear denied him the opportunity to utilize a hearing aid, an
opportunity soon provided to him by the staff at his first
private school (Dec. 13).  IDEA "does not limit the factors that
can be considered in judging the likely impact of the
[individualized education program] on the child so long as they
bear on the question of expected educational benefits" to the
child (Bd. of Educ. of Cmty. Consol. Sch. Dist. No. 21 v. Ill.
State Bd. of Educ., 938 F.2d 712, 716 (7th Cir. 1991)).  It is
certainly appropriate for the Hearing Officer to decide whether
experience shows the pretty picture painted in a individualized
education program is more an impressionistic than a realistic
rendering of what actually happens in the classroom.

In a major (and representative) attempted challenge to the
Hearing Officer's conclusions, District argues that she allowed
Parents to foist their view of educational methodologies--in this

instance, whether any sign language is appropriate in an oral/aural educational environment--onto District, thus committing the forbidden error of mandating the best possible education rather than simply the appropriate education required by IDEA (D. Mem. 8-10). That contention is entirely off the mark. While that issue is clearly important to Parents, not once did the Hearing Officer advert to the use or nonuse of sign language in a classroom as a basis for her decision.[6]

All of District's other arguments are similarly unpersuasive. This Court affirms the Hearing Officer's judgment that the individualized education programs offered by District for the 2004-05 and 2005-06 school years did not provide Max a free appropriate public education.

### Reimbursement

After having reached the just-affirmed conclusion that District had failed to offer Max a free appropriate public education for the years at issue, and having found that Parents

---

[6] Another District argument, asserting that "mapping" of cochlear implants became excluded from coverage within a free appropriate public education under the amendments to Section 1401(1)(B) effective July 1, 2005 (Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647, 2652, 2803), is also insufficient to challenge the Hearing Officer's conclusions. Again whatever the case may be as to that possible facet of treatment of hearing impairments, it was not at all fundamental to the Hearing Officer's conclusion. Instead, recognizing that the issue was controversial, the Hearing Officer listed it as only one problem among many posed by District's programs (Dec. 15).

had unilaterally placed Max in an appropriate educational institution for those years, the Hearing Officer ordered District to reimburse Parents for their out-of-pocket expenses in sending Max to St. Joseph Institute (Dec. 16). At least since <u>Sch. Comm. of Town of Burlington v. Dep't of Educ.</u>, 471 U.S. 359, 369-70 (1985) it has been clear that ordering reimbursement to parents in such a situation is entirely proper and authorized by IDEA (see also Reg. §300.403(c)).

District challenges the reimbursement order in two ways (D. Mem. 7-8, 12-13; D. Opp. Mem. 5-7):

> 1. Illinois law assertedly prohibited such reimbursement because St. Joseph Institute was not approved by ISBE as a residential facility.
>
> 2. Because a residential facility was assertedly not necessary for Max's education, St. Joseph Institute was not the least restrictive environment for Max's education and thus not an appropriate facility under IDEA.

Because the first challenge does not fit neatly into the framework for reviewing reimbursement orders set forth in <u>Florence County Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 15-16 (1993)("<u>Carter</u>"), this opinion will first tackle that challenge and will then employ the <u>Carter</u> framework in addressing the least-restrictive-environment question.

First, District relies solely on Ill. Admin. Code tit. 23,

§401.10[7] in arguing that the Hearing Officer did not have the authority to order District to reimburse Parents for costs incurred in placing their son at St. Joseph Institute because it was not a State-Board-approved residential facility (D. St. ¶15). Fundamentally that contention fails because it flies in the face of the holding in <u>Carter</u>, 510 U.S. at 14 that "[p]arents' failure to select a program known to be approved by the State in favor of an unapproved option is not itself a bar to reimbursement" when, as here, the local school district has failed to meet its IDEA obligations (see also Reg. §300.403(c)).

Moreover, District cites no caselaw--either state or federal--in support of its proposition, nor has this Court found any cases interpreting the Illinois Administrative Code section in that way. That section does not address a Hearing Officer's authority or discretion in an IDEA case. Both on its face and in the context of the code sections to which it relates, that section instead deals solely with what facilities a local school district may contract for, and may then obtain state

---

[7]   That section reads:

> Each provider seeking to become eligible to contract with Illinois public school districts to serve students with disabilities...shall be subject to the approval process described in this Section....A program not approved in accordance with the requirements of this Part shall not be used by school districts to serve students with disabilities.

reimbursement for, when providing public education under its direction (see 105 ILCS 5/14-7.02).

Indeed, in the course of dealing with the different question whether IDEA increased the amount of funds a local school district could recover from the State after having been ordered to reimburse parents in an IDEA proceeding, Bd. of Educ. of Oak Park & River Forest High Sch. Dist. No. 200 v. Kelly E., 207 F.3d 931, 934-38 (7th Cir. 2000) clearly took for granted that the Illinois Administrative Code section did not bar the parents from obtaining reimbursement for "unapproved" costs from the local school district, even if the State would not in turn reimburse the local school district. In fact our Court of Appeals expressly said (id. at 937-38) that any bind the school district might complain about could have been avoided if it had only provided the child with a free appropriate public education through approved institutions in the first instance. That may well end up being District's predicament here, but it is not a ground for challenging the Hearing Officer's reimbursement order.

Carter, 510 U.S. at 15-16 prescribed a three-step test for the permissibility of reimbursement to parents for a unilateral placement in a private school: (1) the public placement offered by the district must have violated IDEA, (2) the private school placement must have been appropriate under IDEA and (3) the total reimbursement must be reasonable (see also Todd v. Duneland Sch.

<u>Corp.,</u> 299 F.3d 899, 905 (7th Cir. 2002)).  As for the first
step, the Hearing Officer has found and this Court has confirmed
that District failed to offer Max a free appropriate public
education for the 2004-05 and 2005-06 school years.  Thus the
public placement was in violation of IDEA for those years.  And
as for the third step, District has neither argued nor offered
any evidence that the amount of the reimbursement is
unreasonable.[8]  So the only question left to address is whether
St. Joseph Institute was an appropriate placement under IDEA.

While a unilateral parental placement need not meet each of
the Section 1401(9) elements (such as meeting the standards of
the State educational agency) to qualify for reimbursement for
the cost of the private placement, it must be otherwise
appropriate under IDEA (see <u>Carter</u>, 510 U.S. at 9-10, 14).  Among
other requirements the placement must meet, it must be
appropriate under IDEA's "least restrictive environment"
provision (Section 1412(a)(5)(A); see also <u>Bd. of Educ. of
LaGrange Sch. Dist. v. Ill. State Bd. of Educ.</u>, 184 F.3d 912,
915-16 (7th Cir. 1999)).  Section 1412(a)(5)(A) imposes this
condition:

> To the maximum extent appropriate, children with
> disabilities, including children in public or private

---

[8]  Appropriately, in her February 16, 2006 clarification of
her Decision and Order the Hearing Officer explicitly stated that
the reimbursement order "must be read to include a standard of
reasonableness" (AR 9).

19

institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

Because multiple witnesses, including staff from St. Joseph Institute, testified that Max's hearing loss did not require a residential facility to obtain educational benefit, District contends that the out-of-state residential placement at St. Joseph Institute was not the least restrictive environment for Max (D. Mem. 7-8; D. St. ¶33). But while there is a strong preference for "mainstreaming" children with disabilities in line with the least restrictive environment requirement (LaGrange, 184 F.3d at 915), to succeed with its challenge on that basis District must have presented an alternative less restrictive plan for Max's education that is appropriate under IDEA (see Bd. of Educ. of Murphysboro Cmty. Unit Sch. Dist. No. 186 v. Ill. State Bd. of Educ., 41 F.3d 1162, 1168 (7th Cir. 1994)). It did not, and that defeats its challenge.

In fact, District's failure to offer Max a free appropriate public education in its schools is the very reason that Parents, unable to find for themselves an appropriate school in the local area, were forced to send their young son out of state, thus making a residential placement necessary (see P. St. ¶27; P. Opp. St. ¶33). Because District has proposed no alternative to St.

Joseph Institute other than the programs already deemed inappropriate, St. Joseph Institute was the least restrictive alternative--in fact, the only alternative--for providing Max an appropriate education with the services that the Hearing Officer found necessary (Dec. 16; see also <u>Murphysboro</u>, 41 F.3d at 1168). Hence St. Joseph Institute was an appropriate private placement under IDEA.

In sum, all of District's opposition to full reimbursement has fallen short. This Court therefore affirms the Hearing Officer's order of reimbursement in its entirety (Dec. 16, as clarified on Feb. 16, 2006 at AR 9-10).

<u>Conclusion</u>

There is of course no genuine issue of material fact separating the parties. That being the case, and because District has failed to demonstrate that the Hearing Officer's Decision and Order applied an incorrect legal standard or was not supported by sufficient record evidence, its motion for summary judgment is denied in its entirety. Instead Parents' motion for summary judgment is granted in full.

This Court therefore finds (1) that District failed to provide Max a free appropriate education for both the 2004-05 and 2005-06 school years and (2) that St. Joseph Institute is an appropriate placement for Max under IDEA, and it accordingly orders District to reimburse Parents as directed in the Hearing

Officer's February 5, 2006 Decision and Order (AR 14-30, as

clarified February 16, 2006 at AR 9-10).  As for State Board,

even though it is a named defendant its only role in this case

was to produce the administrative record--and it has done so.

_____
Milton I. Shadur
Senior United States District Judge

Date:  October 18, 2006